(No. 24868.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, Appellant, *vs.* THE RAILWAY MAIL MUTUAL BENEFIT ASSOCIATION, Appellee.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

ORR, J., dissenting.

JOHN E. CASSIDY, Attorney General, (WILLIAM C. CLAUSEN, JOHN B. HARRIS, and GEORGE S. PORIKOS, of counsel,) for appellant.

DONALD T. WINDER, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on direct appeal from the superior court of Cook county, as the State is interested as a party. The Attorney General filed a complaint in *quo warranto* against appellee, a non-profit corporation, charging it with conducting an insurance business without lawful authority so to do, and seeking a judgment of ouster against it. The superior court dismissed the complaint.

Appellee was incorporated November 17, 1880, under the Corporations act of 1872, as amended. Its object, as was stated in its certificate of incorporation, was "to pay a fund to and protect the families of those of its members who might be removed by death." On December 19, 1912, the corporation amended its certificate of incorporation to show the object for which it was formed to be was "to raise

a fund upon the assessment plan to protect the families of those of its members who may be removed by death and to protect a member of total physical disability by the payment from said fund to a beneficiary of a deceased member, or to a member of total physical disability the sum of two thousand dollars, which sum shall be paid within sixty days after satisfactory proofs of death or total physical disability have been received; all in accordance with the laws of the State of Illinois in such cases made and provided."

It is not contended by the People that appellee was not legally incorporated under the act concerning corporations, approved April 18, 1872, as its provisions then existed, but it is contended that by the amendment, in 1927, of section 31 of that act, appellee was required to reincorporate, and that it has, since the effective date of that act, been subject to ouster. Appellee admits that, in the general sense of the term, it is an insurance organization, but says that it is one unique in character and is and has been legally operating under the statutes of this State since its incorporation. It is conceded that it has never reincorporated under any other act and has never filed with the Insurance Department, or its predecessor, the Department of Trade and Commerce, an intention so to reincorporate.

Appellee's constitution shows its purpose to be in accordance with its articles of incorporation. By it only "Railway postal clerks and all others connected with the railway branch of the United States Mail Service by commission or appointment, post-office inspectors, clerks assigned to Inspection Division, United States Sea-Post clerks and superintendents of mail in post-offices, who are of the Caucasian race of the masculine gender, and under forty years of age,' are eligible to membership. Its constitution and by-laws provide no initiation or ritualistic ceremony. The association has no lodge system. It has a membership of over fifteen thousand, to each of whom it has issued a certificate for $2000 benefits. Applications for membership are not

voted on by the membership but are recommended by two members and passed upon by the executive committee. The constitution of the association also provides for officers and their election at the convention of the association, which is to be held triennially. The board of directors is given general supervision of the business of the association and its books. Membership certificates must be accompanied by a medical certificate and the beneficiary named must be a person or persons having an insurable interest in the life of the member and be related by marriage or kinship. The membership is classified according to age, ranging from twenty-five years to forty years. A regular monthly assessment is imposed on each member, the amount ranging from $1.50 to $2.50 per member, according to the age classification of such member. It is required that this assessment be paid on or before the eighth day of each calendar month. Failure so to do results in suspension of the member without action on the part of the executive committee or any officer of the association. The constitution also provides: "The rate of these assessments shall be proportionately increased by the association if necessary to release the full amount to be paid on the certificate of membership." It is also provided that monthly assessment may be omitted in the discretion of the executive committee. An assessment for expenses of twenty cents per month is levied against each of the members, which assessment may, in case of necessity, be increased or may be omitted. The constitution also provides that "all monies held and received by the association from mortuary assessments shall be deposited to the credit of the benefit fund and shall be used for no other purpose than for the payment of death and disability benefits."

It is also required by appellee's constitution that when the benefit fund falls below an amount equal to two per cent of the total obligation of the association, less an amount equal to one assessment of the benefit fund, extra assessments shall be levied on all members in good standing at

a rate fixed for the class to which the member belongs, until the benefit fund shall be again restored to an amount equal to two per cent of the total obligations of the association. It has an accumulated benefit fund of about $600,000.

There is no doubt that appellee is an insurance organization in the general sense of the term, though it is a not-for-profit organization, organized under the Corporations act. *Commercial League Ass'n* v. *People*, 90 Ill. 166; *Rockhold* v. *Canton Masonic Mutual Benevolent Society*, 129 id. 440.

The position of the People, as we understand it, is that since the effective date of the amendment to section 31 of the Corporations act, adopted in 1927, and under the provisions of section 15 of the Mutual Benefit Association act, passed by the same session of the legislature, appellee is subject to ouster.

By section 31 of the Corporations act, as amended in 1927, (State Bar Stat. 1935, chap. 32, par. 161,) it is provided: "Associations and societies which are intended to benefit any person or persons or widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, except for permanent disability, heretofore incorporated under the provisions of this act, shall not, after this act becomes effective, engage in such business other than that they may retain their corporate existence six months for the sole purpose of winding up their business or reincorporating under some act, the enforcement of which comes within the jurisdiction of the Department of Trade and Commerce of this State." It will be seen that appellee does not come within these provisions since it does levy annual dues to be paid in monthly installments. Such system of collection of assessments amounts to the levy of annual dues, though collected monthly. The fact that these stated payments may be in-

creased in size or number does not make them less annual dues.

Section 13 of the Mutual Benefit Association act, enacted in 1927, (State Bar. Stat. 1935, chap. 73, par. 435(13),) designates the companies to which the act shall apply. It provides: "Any association organized to insure the lives of its members which provides for the payment of losses and the expenses of the management and prosecution of the business by payments, to be made upon assessment as required, by members holding similar contracts and wherein the members' liability to contribute to the payment of losses accrued, or to accrue, is not limited to a fixed sum shall be deemed to be mutual benefit associations engaged in the business of life insurance upon the mutual benefit assessment plan and shall be subject to the provisions of this act, and such associations shall be subject to the provisions of no other insurance law of this State except as in this act definitely provided." Certain of the language of section 13 may be said to be applicable to appellee in the sense that the liability of its members to contribute to the payment of losses is not limited to a fixed sum. A fixed sum is designated but since it may be increased by assessment, if necessary, it may be said that the liability of appellee's members to contribute to the benefit fund is not limited to a fixed sum.

Section 15 of the Mutual Benefit Association act is as follows: "Any existing domestic corporation transacting business under an act entitled, 'An act concerning corporations,' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of benefiting the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where the member shall receive no money as profit or otherwise except for permanent disability; and all associations engaged in the business of insurance of lives of its members and not subject to any other of the insurance laws of the State, shall reincorporate under its existing corporate

name, or a corporate name selected for that purpose in accordance with this act under the provisions of this act upon filing with the Director of Trade and Commerce, a declaration of its desire to do so, signed and duly acknowledged by a majority of the board of directors, trustees or managers, together with a certificate of association as required of associations proposing to organize under the provisions of this act." This language is broad enough to include appellee who was incorporated and doing business under the Corporations act of 1872.

In *People* v. *Elgin Home Protective Ass'n,* 359 Ill. 379, it was held that it was the clearly expressed intent of this act to provide for the control of associations coming within the definition of a mutual benefit society or association, and that such society or association is required to incorporate under that act. In that case the association involved differs from appellee in that its membership was restricted to persons between the ages of fourteen and forty-five who were residents of the city of Elgin, and its contracts for benefit insurance were limited to the sum of $1000. It was there said: "By it all insurance companies previously operating under the act of 1872 as corporations not for pecuniary profit were required to comply with the provisions of the present act. It also provided that all associations not subject to any other of the insurance laws of this State shall reincorporate under their existing corporate names, or corporate names selected for that purpose in accordance with this act."

Appellee says that though it may have been the intention of the legislature to require it to reincorporate under the Mutual Benefit Association act it cannot be required to do so because section 15, in so far as it makes such requirement, impairs the obligations of appellee's existing contracts with its members and, therefore, contravenes the contract clauses of the State and Federal constitutions.

In *York* v. *Central Illinois Mutual Relief Ass'n,* 340 Ill. 595, the association voluntarily reincorporated under the Mutual Benefit Association act here under consideration. An action was brought by representatives of a deceased member on a certificate of membership. The facts of the reorganization and the issuance of a new certificate were shown. The new certificate changed the conditions of the original certificate to comply with the provisions of the Mutual Benefit Association act by including a clause forfeiting the benefits of the certificate in case of self-destruction of the member within one year after issuance of the certificate. No such limitation had been in the original certificate. It was held, citing *Jones* v. *Loaleen Mutual Benefit Ass'n,* 337 Ill. 431, that the original certificate of membership issued by the old association was a contract to pay a certain sum at the member's death if he had paid the assessments as they became due, and that the legislature had no power to interfere with or impair the validity of that contract. In the *York case,* as in the *Jones case,* the reorganization was voluntary, and no question of the power of the legislature to require such reincorporation arose. Nor was there, in the *Elgin case,* any question as to whether the Mutual Benefit Association act provided a plan or adequate method for carrying out the contracts of the association, there involved, under the Mutual Benefit Association act.

Appellee differs from the associations in those cases in this: All of its certificates are for $2000. No member is accepted over the age of forty. These certificates are contracts which appellee made with all its members. The Mutual Benefit Association act, by section 1 of the original act, provided that the maximum amount of benefits should not be in excess of a certain schedule,—*i. e.,* for persons becoming members between the age of one and five years the limit was $200; between six and nine years, $500; between ten and fifty-five years, $1000; between fifty-five and sixty

years, $800, and for persons becoming members between the ages of sixty-six and seventy years, the sum of $500.

Section 333 of the Insurance Code, (Ill. Rev. Stat. 1937, chap. 73, par. 945,) fixes the schedule of maximum benefits as follows: One to five years, $200; six to ten years, $500; eleven to forty years, $1000; forty-one to forty-five years, $800; forty-six to fifty years, $500; fifty-one to fifty-five years, $300; fifty-six to sixty years, $200. Certain graduations of this schedule are there prescribed.

It is provided both by the original Mutual Benefit Association act and the Insurance Code that assessments shall be distributed equally over the classes enumerated. It will be seen that no provision has been made, either by the Mutual Benefit Association act or the Insurance Code, under which appellee can operate without impairing its outstanding existing obligations, all of which, as we have seen, carry a benefit of $2000 to each member. Appellee could no longer issue certificates of that character, and assessments levied against admitted members to pay death or disability benefits accruing to beneficiaries of its present members, would place upon such new members an unequal and unfair burden. Neither the Mutual Benefit Association act nor the Insurance Code provides for carrying on of these contracts with the present membership of appellee under any separate provision or arrangement, and appellee would be without power so to do. Therefore, in the absence of legislative provision for such a situation, to require appellee to reincorporate under the Mutual Benefit Association act would impair the obligation of its outstanding contracts and the act, in so far as it would so operate, would be invalid as to appellee.

Appellant argues that this point was not raised in the court below and therefore should not be heard here. Appellee won in the court below and the constitutional question comes into existence for the first time in this court by reason of the position of the People. Therefore, the contention of appellant that this court should not give ear to such a point is not well taken.

Appellee also argues that since it is an association limiting its membership to members of the postal service, it comes within the exemption of section 308a of the Insurance Code, relating to associations now doing business in the State, "Which admit to membership only persons engaged in one or more crafts * * * in the same or similar lines of business." However, it is unnecessary to further extend this opinion to pass upon that question since, as we view it, appellee cannot, without violating its contracts with its members, incorporate under the Mutual Benefit Association act.

Nor does appellee come within the provisions of the Life Insurance Assessment act of 1893. While it accumulates a benefit fund, such fund can be used for payment of death or disability benefits only. The reserve fund provided for in the Life Insurance Assessment act may be used for purposes other than death or disability benefits, as the act shows. (Laws of 1893, p. 117.) Appellee's benefit fund is not a reserve fund, as that term is understood in insurance law. There is also language in sections 7 and 11 of the Life Insurance Assessment act of 1893 indicating an intention on the part of the legislature to exempt associations such as appellee from the act. The language of section 7 is: "But nothing herein contained shall be construed as applicable to organizations which conduct their business as fraternal societies, on the lodge system, or to organizations which limit their certificate holders to a particular order or fraternity, and which do not employ paid agents in soliciting business, and which are now permitted to do business in this State." The language of section 11 is: "Nothing contained in this act shall be construed to apply to * * * any association organized solely for benevolent purposes and not for profit and which do not employ paid agents in soliciting business." No other act is pointed out to us under which appellee could be compelled to reincorporate. Until the legislature has made provisions under which appellee can legally be compelled to reincorporate under the Mutual

Benefit Association act, or some other act, it should not be ousted of its present business.

The judgment of the superior court was right, and is affirmed.

*Judgment affirmed.*

Mr. JUSTICE ORR, dissenting:

The opinion in this case tends to defeat the Insurance Code of 1937, designed by experts in insurance law to cover every company doing an insurance business in Illinois. Section 121 of the code requires every company entering into a contract of insurance, as insurer, to have a certificate of authority from the State Director of Insurance, yet this opinion holds the code inapplicable to the defendant insurance company. Specifically, the department contends that the Life Insurance Assessment act of 1893 applies to defendant. The opinion takes a contrary view. In my judgment, defendant comes within the reserve fund provisions of the act of 1893 because only an excess of reserves over $100,000 may be used for other purposes than the payment of death or disability benefits. Furthermore, the defendant is not exempt from this act, because it is not a fraternal order with a lodge system, does not limit its certificate holders to one order or fraternity, and is not a benevolent society.

If defendant comes within the provisions of the act of 1893, it also falls within the provisions of the Assessment act of 1927, and within the Insurance Code of 1937. Provision is made in the code and in the act of 1927 to protect policies previously written, so there would be no impairment of contract. Only future policies written by the companies are subject to the new contract requirements. This is a complete answer to the main reasoning of the foregoing opinion.