**Ethel O. Henderson et al., Appellees, v. Bankers Life and Casualty Company, Appellant.**

**Gen. No. 42,472.**

Opinion filed May 1, 1944.

HUBERT LEE STEED and MEYER A. GINSBURG, both of Chicago, for appellant.

SIDNEY J. SPARBERG, of Chicago, for appellees.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment entered against it in favor of fifteen plaintiffs—beneficiaries under a like number of life insurance policies issued by the Lafayette Mutual Benefit Association (hereafter called the Lafayette) and reinsured conditionally by the Jefferson National Life Insurance Company (hereafter called the Jefferson), whose obligations and liabilities were assumed by the defendant.

The motion of plaintiffs to strike from the record the report of the proceedings before the trial court has

been reserved to the hearing. The ground of the motion is that the report was not submitted to the trial judge for his certificate and filed in the trial court within the time prescribed by the rules of the Appellate Court. It appears from the record that a written order that the original copy of the proceedings at the trial be incorporated in the record on appeal, entered in the trial court, bears the O. K. of plaintiffs' counsel. Plaintiffs are therefore estopped to say that the record was not properly signed by the trial judge and filed in apt time. *Fedorchak v. Jeffers*, 287 Ill. App. 457; *Madden v. City of Chicago*, 283 Ill. 165. The motion is denied.

The case was tried before the court without a jury upon a third amended complaint, alleging that the plaintiffs severally are beneficiaries under policies issued by the Lafayette during the years 1934, 1935 and 1936 upon the lives of certain assureds, each of whom died between June 16, 1938 and July 16, 1938; that on June 16, 1938 the Lafayette entered into a contract with the Jefferson, a copy of which is attached as an exhibit to the complaint, whereby the Jefferson assumed and agreed to pay any liabilities due under the Lafayette policies; that the Jefferson paid each of the plaintiffs as beneficiaries of the respective policies under which each was claiming, a sum less than was provided in the policies; that on account of the subsequent insolvency of the Jefferson, the defendant, on February 1, 1940, under an agreement with the Jefferson, approved by the director of insurance of the State of Illinois, assumed and agreed to pay any and all liability of the Jefferson. Defendant does not contest its liability for the Jefferson obligations under the reinsurance contract. In its answer it states that this liability is restricted by section 7 (d) of that agreement and has been fully discharged by payment to the respective plaintiffs of the amounts admitted to have

been received by them, and further, that such payments constituted an accord and satisfaction.

The material provisions of the reinsurance contract between the Lafayette and the Jefferson are: Section 1, "The Jefferson does hereby reinsure and assume, on the effective date of this agreement, subject to the terms and conditions and provisions and only to the extent herein provided, the liability of the Lafayette under all the Certificates . . . ." Section 2, ". . . As of the assumption date of this agreement the members of the Lafayette shall become members of the Jefferson upon the terms and conditions hereinafter set forth in this agreement and . . . subject to all the terms and conditions of this agreement." Section 4 (after reciting the transfer, assignment and delivery to the Jefferson of all the assets of every kind and nature of the Lafayette), "In consideration thereof, the Jefferson promises fully to discharge every legal or equitable obligation or liability of the Lafayette, provided, however, that the policy obligations and liabilities hereunder are assumed by the Jefferson only on the terms and conditions herein set forth." Section 7 (d), "The liability assumed by the Jefferson with respect to any member of the Lafayette under any certificate of membership hereby reinsured is to be in accordance with such certificate of membership as of the effective date of this reinsurance contract, provided that the member pays to the Jefferson the required premium as of his attained age nearest birthday on the effective date of this contract, for the amount of insurance specified in his certificate according to the monthly premium rates for $100 of insurance shown in the following schedule. The amount of insurance referred to above is the face or ultimate amount not restricted or limited by the grading of benefits. Since the membership of the Lafayette has been accustomed to paying a monthly premium of $1.00, the member is hereby given the option of continuing to pay $1.00 per month and

maintaining his certificate in force for the amount of insurance purchased by $1.00 per month at his attained age nearest birthday on the effective date of this contract, in accordance with the following schedule. In such event this amount shall not change during the lifetime of the member. (Schedule.) The payment of the first premium within thirty days after the assumption date shall constitute an election by the member to maintain the amount of insurance hereunder according to the benefits specified in his certificate of membership or to decrease his insurance to the amount which the premium of $1.00 per month will buy as of the attained age of the member.''

On June 16 or 17, 1938, the Jefferson mailed to each policyholder of the Lafayette in good standing a certificate of assumption, reciting on the first page that the designated certificate issued by the Lafayette has been assumed by the Jefferson, ''subject to the terms and conditions of said certificate and the reinsurance contract recited on the succeeding pages hereof, effective as of midnight June 16, 1938.'' On pages 2 and 3 following appeared the contract of reinsurance. Each of the assureds made payments of $1.00 after June 16 and before their respective deaths, which occurred prior to July 16, 1938; settlements were made with all beneficiaries by paying each the full amount of insurance purchasable for $1.00 per month, as provided in section 7 (d) of the contract of insurance, by a check bearing on its face, ''In full settlement on life of (blank), insured,'' accompanied by a letter stating that payment was ''in full of the company's liability.'' The plaintiffs received the money on the checks and surrendered the policies, each of which bore an indorsement by the respective beneficiary of receipt of the sum named in the check in full payment of all benefits due and payable under the policy surrendered by the beneficiary. This action was commenced about two years after acceptance of these payments.

By the amended complaint plaintiffs' action is based upon the contract of reinsurance. At the commencement of the trial plaintiffs' counsel stated that they were not suing on the certificates; that the contract of reinsurance was the basis of the action. They say here that ''The basic issue involved herein is rather whether the attempt by Jefferson to limit its liability in the reinsurance agreement during the lifetime of the assureds, was binding upon them so as to limit the amount due the beneficiaries under the original certificates of insurance issued by Lafayette.''

In *Weil v. Federal Life Ins. Co.*, 264 Ill. 425, an action by a beneficiary against the reinsurer, the court said (433): ''The Inter-State Insurance Company (original insurer) could not transfer its liability to the defendant and compel Weil to accept it as an insurer. . . . But Weil had his election to repudiate the transfer if he saw fit or to accept the obligation imposed upon the defendant by its contract. (4 Cooley's Briefs on Insurance, 3942.)'' In 29 Am. Jur., Insurance, sec. 1366, the author says: ''. . . the general rule is that the reinsurer is liable either under its reinsurance contract or upon a subsequent agreement with the original insured; . . . In some cases, however, under the contracts of reinsurance, the reinsurer, as a result of the construction of the reinsurance contract, has been held liable for a smaller amount than that provided for by the original policy.'' In *Garretson v. Western Life Indemnity Co.*, 175 Iowa 172, where the judgment, entered on a directed verdict against the insurer in the sum of $308.37 on two policies issued by the original insurer in the sum of $4,000, was affirmed, the court said (177): ''The general rule as to reinsurance contracts is that the reinsurer is to be held liable either under its reinsurance contract or upon a subsequent agreement made between it and the assured, and the assured has the right to accept the reinsurance offered him, or to sue the original company for damages.'' To

the same effect is *Northwestern Nat. Life Ins. Co. v. Gray,* 161 Fed. 488. The case of *Roper v. Columbian Circle,* 113 Kas. 280, is very much like the present case. The insured obtained a benefit certificate for $2,000 from The Sons & Daughters of Justice, a fraternal beneficiary society, naming her husband as beneficiary; about 20 years later, the society being in financial difficulties, a receiver was appointed and took charge of all the assets and affairs of the society; shortly thereafter a contract of reinsurance was entered into whereby the Columbian Circle agreed to insure the living members of the several classes of The Sons & Daughters of Justice; this agreement was brought about under the supervision of the court and was approved by the insurance departments of Kansas and Illinois, the states of organization of the insurer and reinsurer; all assets of the society were delivered to the defendant; the insured died before the rerating of the assessments and benefits for members of the society had been made; defendant calculated that the insured was entitled under the reinsurance contract to $504.03; plaintiff, the husband of insured, accepted the sum and signed the receipt acknowledging payment in full of the benefit due and delivered the certificate to the defendant; he later brought suit to recover $1,425 upon the certificate; the trial court directed a verdict for the defendant. The Supreme Court held that the liability of the defendant must be measured under the contract of reinsurance and that the only right which plaintiff had against defendant was the enforcement of the obligations assumed in that contract. The reinsurance contract contained a provision for rerating the members of the society at their attained ages at rates based on the American Experience Tables of Mortality, and that members electing to pay their former contribution or assessment rates should receive benefits in the proportion of their contributions to the rates based on the American Experience

Tables of Mortality. The amount due under this provision was the amount paid to the husband and accepted by him. The Supreme Court said: "Under the contract and without regard to the effect of the release executed by the plaintiff, he was entitled to claim no more from the defendant than it had agreed to pay, and that amount having been paid, the court properly directed a verdict in favor of the defendant."

Plaintiffs rely principally upon *Wallace v. Commercial Life Ins. Co.,* 271 Ill. App. 291. The Commercial entered into a contract of reinsurance with the International Mutual Union, the original insurer; January 2, 1931 it mailed a rider of assumption to Lena M. Wallace, the insured and wife of the plaintiff, substantially the same as the certificate of assumption in the present case, except that neither a copy of the reinsurance agreement nor a statement of its limitations, restrictions, conditions and provisions relied upon as affecting the liability of the Commercial and reducing the amount of the insurance was given to the insured; assessments levied on the Wallace certificate were all paid up to the death of Lena Wallace on March 3, 1931; the Commercial offered to pay $134.33, in accordance with its interpretation of the limitations contained in section 6 of the insurance agreement, instead of the $1,000 stated in the certificate; judgment for plaintiff for $1,000 was affirmed. In determining the rights of the insured the Appellate Court held that neither the insurer nor the reinsurer could take any action which would impair the contract of the certificate holder unless the certificate holder consented to the change (citing *Jones v. Loaleen Mut. Benefit Ass'n,* 337 Ill. 431, and *York v. Central Illinois Mut. Relief Ass'n,* 340 Ill. 595), and that in all the communications to Lena Wallace, the policyholder, there was no reference to any change in the terms of the certificate; that there was no proof of any intention to accept the terms of the new certificate. In determining the liability of the defendant as

reinsurer, the court said (295): "The Commercial Life Insurance Company having contracted to take over the assets and assume the liabilities of the International Mutual Union, became primarily liable on the original certificate . . . ." The provisions of the contract of reinsurance are not set out in the opinion, but it is stated that the Commercial entered into a reinsurance agreement "whereby the said Commercial Life Insurance Company agreed to reinsure all certificates of membership of International Mutual Union that were in full force and good standing, subject however to the limitations, restrictions, conditions and provisions contained in the reinsurance agreement." The conclusion of the court that the reinsurer contracted to assume the liabilities of the original insurer ignores whatever limitations, restrictions or conditions benefiting the reinsurer were to be found in the contract. No authorities are cited and no reason is given to justify doing so. A policy of insurance cannot be altered without the consent of the insured. An insured cannot be compelled to accept a contract of reinsurance, but it does not follow that he can accept a part of it and reject other parts; that he can impose upon the reinsurer the burdens of the contract and deny it the benefit of the provisions which lighten the load it is to carry. If, as plaintiffs claim, the insured under the policies here involved have made no election to accept the reinsurance contract, the plaintiffs, like the insured, must accept or reject it as a whole. Bringing suit upon it is an acceptance of it, and plaintiffs are bound by all its terms.

The *Jones* and *York* cases, cited in the *Wallace* case, do not support plaintiffs' theory. The cases are practically identical. They are not reinsurance cases. The action in each was based upon a certificate issued by a mutual benefit association, incorporated under the Corporation Act of 1872 as a corporation not for pecuniary profit, which was required to reincorporate

under certain legislative acts of 1927; the old certificates were for larger sums than was permitted under the later legislation and the reincorporated companies sought to limit their liability to the smaller sums payable under the new legislation. The Supreme Court in each case held that the contract with the insured could not be changed without his consent and, as said in the *Jones* case (440): "We agree with the statement of the Appellate Court in this connection, that 'the legislature intended that if an existing corporation under the act of 1872 desired to be re-incorporated under the act of 1927 it might do so, and having re-incorporated, its liability under existing insurance contracts should continue, but that as to all new business the policies issued should be in accordance with the limited liability fixed by the act of 1927.'" Nothing that is said in either case is inconsistent with the position we take, that in bringing suit upon the reinsurance contract, and thereby accepting it, plaintiffs are bound by its terms.

The position taken by the defendant that its liability on the policies here involved was for a sum less than the face of the policies, to be determined by a rerating of the assureds under the provision of the reinsurance contract, was not arbitrary and baseless. The contract was drawn to protect the Jefferson in this respect, and it consistently adhered to its position. Acceptance by the respective plaintiffs of the amount due under the several policies according to defendant's construction of the reinsurance contract and its liability thereunder, in full settlement of all claims under the policies surrendered by each plaintiff, constituted a valid accord and satisfaction, relieving defendant from liability on the policies. *Greenberg v. Metropolitan Life Ins. Co.*, 379 Ill. 421; *Farmers & Mechanics Life Ass'n v. Caine*, 224 Ill. 599.

The judgment is reversed.

*Reversed.*

O'Connor, P. J., and Matchett, J., concur.